## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## AT CAPE GIRARDEAU

| | | |
|---|---|---|
| STATE OF MISSOURI, ex rel. | ) | |
| Chris Koster, and the | ) | |
| MISSOURI DEPARTMENT | ) | |
|    OF NATURAL RESOURCES, | ) | |
| MISSOURI STATE EMERGENCY | ) | |
|    MANAGEMENT AGENCY | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| UNITED STATES ARMY CORPS | ) | |
|    OF ENGINEERS, | ) | |
| MAJOR GENERAL MICHAEL J. WALSH, | ) | |
| COLONEL VERNIE L. REICHLING JR. | ) | |
| | ) | |
|      Defendants. | ) | |

### Complaint

The State of Missouri, at the relation of Chris Koster, Attorney General, the

Missouri Department of Natural Resources, and Missouri State Emergency Management Agency

jointly file this complaint and allege as follows:

### Nature of the Action

1.       The purpose of this action is to block the Army Corps of Engineers from

detonating explosives that will destroy portions of the Front Line levee, which is located in

Mississippi and New Madrid Counties in Missouri.  The destruction will flood most of

Mississippi County and a portion of New Madrid County.  The action violates the Missouri

Clean Water Law, Mo. Rev. Stat. § 644, et seq., and the federal Administrative Procedures Act, 5

U.S.C. § 701, et seq.

**Parties**

2.       Chris Koster, is the duly elected, qualified, and acting Attorney General of

Missouri.  The Attorney General is authorized to institute, in the name and on behalf of the State,

all civil proceedings at law or in equity necessary to protect the rights and interests of the State

under § 27.060, RSMo 2000 .  Section 644.076, RSMo, of the Missouri Clean Water Law

authorizes the Attorney General to bring this lawsuit.

3.       The Missouri Department of Natural Resources ("the Department") is a duly

authorized state agency created under Mo. Rev. Stat. §640.010, to administer the programs

relating to environmental control and conservation, and to manage the natural resources of the

State of Missouri.

4.       The Missouri State Emergency Management Agency ("SEMA") is a duly

authorized state agency created under Mo. Rev. Stat. §44.020 responsible for the planning for

and responding to natural and manmade disasters in the State of Missouri.  Attorney General

Koster, the Department and SEMA shall be collectively referred to as "the State" in this Petition

unless specifically designated otherwise.

5.       The United States Army Corps of Engineers ("the Corps") is the agency of the

United States government with responsibility for flood control in the Mississippi River basin.

6.       Defendant Major General Michael J. Walsh is the commander of the Mississippi

Valley Division of the Corps and President-designee, Mississippi River Commission.  General

Walsh is named in his official capacity only.

7.       Colonel Vernie L. Reichling Jr. is the commander of the Corps' Memphis

District.  Colonel Reichling is named in his official capacity only.

**Jurisdiction and Venue**

8.       This Court has jurisdiction pursuant to § 313 of the federal Clean Water Act, 33, U.S.C. 1323, and Administrative Procedures Act, 5 U.S.C. § 703.  Venue is proper in this court.

**General Allegations**

9.       The Flood Control Act of  May 15, 1928, 45 Stat. 534, authorizes the Corps to develop plans for controlling flooding on the Mississippi River.

10.       In response to that congressional authorization, and to control flooding above and below the confluence of the Mississippi and Ohio Rivers, the Corps developed the Birds Point – New Madrid Floodway and, in 1985, issued an associated "Birds Point – New Madrid Floodway Operations Plan" ("the Plan").  See Exhibit A.

11.       In essence, the floodway is a huge swath of land that the United States government has decided to sacrifice to flooding in order to protect other areas that it considers more valuable.

12.       The floodway encompasses most of Mississippi County, Missouri and parts of New Madrid County Missouri.  In all, the floodway covers over 130,000 acres in Missouri, an area three times the size of the city of St. Louis.

13.       In constructing the floodway, the United States built two levees.

14.       One levee, known as the frontline levee, follows closely along the path of the river over approximately 40 miles starting upstream at a point across the river from Cairo, Illinois, and ending just up river of New Madrid, Missouri.

15.       Between these two cities, the river forms a wide arc.

16.     The second levee, known as the setback – mainline levee, is fairly straight and connects the two ends of the arc, creating an open area between the two levees that is about 30 miles long and is, in places, more than ten miles wide.

17.     The area inside the two levees has over 90 homes and more than 200 residents, as well as pets and livestock.  In addition, the area is being used for crops that have significant economic value.

18.     The area inside the floodway also has petroleum storage tanks, farm chemical storage buildings and LP gas tanks.

19.     The Corps issued the Plan in 1986.

20.     The Plan calls for blowing up portions of the frontline levee so that flood waters can be directed into the floodway.

21.     Pursuant to the terms of the Plan, the decision to blow up the levee is made on the recommendation of the Corps' Memphis District commander and on the order of the President of the Mississippi River Commission.

22.     When this happens, the inundation of flood waters will flood the homes, buildings and cropland in the floodway.

23.     The threat of flooding is currently causing the evacuation of the families in the floodway.

24.     The flood will also cause the release of farm chemicals into the environment and cause those chemicals, along with sediment and other contaminants, to enter into waters of the state of Missouri.

25.     Pursuant to § 313 of the federal Clean Water Act, 33, U.S.C. 1323, each department, agency, or instrumentality of the federal government engaged in any activity which

may result in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, shall be subject to, and comply with, all State requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner and to the same extent as any nongovernmental entity.

26.     Thus in § 313 of the federal Clean Water Act, the federal government has waived its sovereign immunity for violations of state water pollution laws.

27.     Section 313 of the federal Clean Water Act goes on to say that the waiver applies to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner.

28.     As a consequence, Defendant is subject to suit in this court for violations of Missouri's Clean Water Law, Mo. Rev. Stat. § Chapter 644.

29.     The preceding paragraphs are incorporated into each subsequent count of this complaint.

**COUNT I – Unlawful Pollution to Waters of the State**

30.     Pursuant to Mo. Rev. Stat. § 644.051.1(1), it is unlawful for any person to cause pollution of any waters of the State or to place or cause or permit to be placed any water contaminant in a location where it is reasonably certain to cause pollution of any waters of the State.

31.     Mo. Rev. Stat. § 644.016(26) defines "person" to include any agency, board, department, or bureau of the federal government.

32.     Mo. Rev. Stat. § 644.016(26) defines "pollution" as such contamination or other alteration of the physical, chemical or biological properties of any waters of the state, including

change in temperature, taste, color, turbidity, or odor of the waters, or such discharge of any liquid, gaseous, solid, radioactive, or other substance into any waters of the state as will or is reasonably certain to create a nuisance or render such waters harmful, detrimental or injurious to public health, safety or welfare, or to domestic, industrial, agricultural, recreational, or other legitimate beneficial uses, or to wild animals, birds, fish or other aquatic life.

33.    Mo. Rev. Stat. § 644.016(26) defines "waters of the state" as all rivers, streams, lakes and other bodies of surface and subsurface water lying within or forming a part of the boundaries of the state which are not entirely confined and located completely upon lands owned, leased or otherwise controlled by a single person or by two or more persons jointly or as tenants in common and includes waters of the United States lying within the state.

34.    Mo. Rev. Stat. § 644.016(23) defines "water contaminant" as any particulate matter or solid matter or liquid or any gas or vapor or any combination thereof, or any temperature change which is in or enters any waters of the state either directly or indirectly by surface runoff, by sewer, by subsurface seepage or otherwise, which causes or would cause pollution upon entering waters of the state, or which violates or exceeds any of the standards, regulations or limitations set forth in sections 644.006 to 644.141 or any federal water pollution control act, or is included in the definition of pollutant in such federal act

35.    Defendants' breach of the frontline levee will cause pollution to waters of the state of Missouri and will place or cause or permit to be placed water contaminants in a location where they are reasonably certain to cause pollution of waters of the state of Missouri in violation of Mo. Rev. Stat. § 644.051.1(1).

36.    Mo. Rev. Stat. § 644.076.1 states that in the event the director of the Missouri Department of Natural Resources determines that any provision of sections 644.006 to 644.141

or standard, rules, limitations or regulations promulgated pursuant thereto, is in imminent danger of being violated, the director may cause to have instituted a civil action in any court of competent jurisdiction for the injunctive relief to prevent any such violation or for the assessment of a penalty not to exceed ten thousand dollars per day for each day, or part thereof, the violation occurred and continues to occur, or both, as the court deems proper.

37.      Pursuant to Mo. Rev. Stat. § 644.076.1, RSMo, this Court may impose upon Defendants an injunction and penalties of up to Ten Thousand Dollars ($10,000.00) per day for each day of each violation.

### Count II – The Birds Point – New Madrid Floodway Operations Plan is Unlawful under the Administrative Procedures Act

38.      Pursuant to § 706 of the Administrative Procedures Act, 5 U.S.C. § 706, the reviewing court must set aside agency action that is held to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or contrary to constitutional right, power, privilege, or immunity.

39.      Defendants have been arbitrary, capricious and abused their discretion in the adoption of the Plan because the Plan protects some land over other land without identifying the basis for that decision.

40.      Defendants have been arbitrary, capricious and abused their discretion in the adoption of the Plan because Defendants have failed to update the plan for over twenty-five years to account for changes in the conditions of the river or the relative value of the properties affected by the Plan.

41.      Defendants have acted in a manner contrary to constitutional rights because Defendants have not secured all necessary easements and appropriate rights to allow the flooding of all of the private property to be affected.

42.     This court may set aside the Defendants' adoption of the Plan pursuant to § 706 of the Administrative Procedures Act, 5 U.S.C. § 706.

**Count III – Defendants' actions in implementing the Birds Point – New Madrid Floodway Operations Plan are Unlawful under the Administrative Procedures Act**

43.     Pursuant to § 706 of the Administrative Procedures Act, 5 U.S.C. § 706, the reviewing court must set aside agency action that is held to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or contrary to constitutional right, power, privilege, or immunity.

44.     The Plan does not set mandatory procedures.  Rather, the plan gives the Corps' Memphis district commander and the President of the Mississippi River Commission the discretion to implement the plan.

45.     However, the Plan states that "[i]t is the intent that operation occur only as absolutely essential to provide the authorized protection to **all** citizens."  The Plan at page 2.

46.     Defendants have been arbitrary, capricious and abused their discretion in the implementation of the Plan because the actions taken in implementing the Plan will result in the unnecessary destruction of property.

47.     Defendants have been arbitrary, capricious and abused their discretion in the implementation of the Plan because the actions taken in implementing the Plan will result in the release of pollutants into waters of the state of Missouri in violation of Missouri law.

48.     Defendants have been arbitrary, capricious and abused their discretion in the implementation of the Plan because there is currently no evidence that the implementation of the Plan is needed to protect the integrity of any other flood control structures in the Mississippi River basin.

49.     Defendants have been arbitrary, capricious and abused their discretion in the implementation of the Plan because the Corps has failed to take all actions necessary to limit water levels in the Mississippi River basin, including the failure to properly manage reservoirs to minimize releases to the Mississippi and Ohio Rivers.

50.     Defendants have been arbitrary, capricious and abused their discretion in the implementation of the Plan because the corps has failed to adequately identify the basis for implementing the steps for leading up to and including the demolition of the frontline levee.

51.     Therefore, this court may set aside the Defendants' adoption of the Plan pursuant to § 706 of the Administrative Procedures Act, 5 U.S.C. § 706.

WHEREFORE, the State asks this Court for a Judgment granting the following relief:

A.     Issuing a temporary restraining order and preliminary and permanent injunctions prohibiting Defendants from any violations of the Missouri Clean Water Law, Chapter 644, RSMo, and the regulations duly promulgated thereunder;

B.     Issuing a temporary restraining order and preliminary and permanent injunctions prohibiting Defendants continued implementation of the Birds Point – New Madrid Floodway Operations Plan;

C.     Assessing costs of these proceedings against Defendants; and

D.     Granting such other relief as may be just and proper.

Respectfully submitted,
CHRIS KOSTER
Attorney General

/s/John K. McManus
JOHN K. MCMANUS
Chief Counsel
Missouri Bar No. 59486
Broadway State Office Building
221 West High Street, 8th Floor
P.O. Box 899
Jefferson City, MO 65102
Telephone: (573) 751-0052
Facsimile: (573) 751-8796

ATTORNEYS FOR PLAINTIFF